Case No. 20-2114, ABB Enterprise Software Inc. v. United States Mr. Kendler Thank you, Your Honor. Ron Kendler of Whiten Case on behalf of Hyundai. May it please the Court. Your Honors, this is a case about the Commerce Department changing its mind years after making a final decision and then penalizing Hyundai for that very change. The government bases its entire defense of the application of Adverse Facts Available, or AFA, on the notion that it belatedly, quote, discovered Hyundai's allegedly hidden Service Related Revenue, or SRR. The Court of International Trade, CIT, then affirmed the application of AFA on the basis of that supposed discovery. Yet, the administrative record and the statute refute the government's defense. As Hyundai has demonstrated, the application of AFA is therefore invalid, and we respectfully ask the Court to reverse the CIT's decision and remand to the Commerce Department. There are two reasons why Commerce's application of AFA on remand was invalid. Two things that the Court should remember above all else in this case. Commerce's awareness and Commerce's approval. Wait, I'm a little confused about your argument. I thought the issue here was whether under 1677MD, the Commerce had to give you an opportunity to remedy if it found that there was something wrong with the data, right? Thank you, Judge Dyke, yes. And what Commerce said and what the CIT affirmed was that that opportunity didn't have to be given because somehow the jerk line had concealed what was in the data during the course of the proceeding. Does it make any difference whether there was concealment or not in terms of whether there should be an opportunity to correct? According to the statute, no. This makes no difference, and we contest the notion that there was concealment. That is why I noted the Commerce Department's awareness and its approval of Hyundai's reporting of service-related revenue, or SRR. This goes back to the idea that the Commerce Department aversed that it discovered the service-related revenue, and that's why it was excused from providing the deficiency notice under 1677MD. But as the record demonstrates, there was no such concealment. There was no such discovery. I understand that, but I don't think you're answering my question. My question is a hypothetical. Suppose there was concealment. Is there an obligation, once the concealment is discovered, to give an opportunity to remedy? Absolutely. The language of 1677MD says that as soon as Commerce, quote, determines that information is missing, it shall promptly inform the person submitting the response. It makes no reference to concealment or any kind of intent of whether the information is submitted or not. Once Commerce discovers that there's no information or that there's less information than it asked for, it must notify the respondent. With that said, as discussed, we would contest this notion of concealment in this case. First, Commerce was at all times fully aware of Hyundai's SRR reporting based on Hyundai's explanations and the documentation on the record. It did not discover any concealed SRR. And second, the Commerce Department repeatedly and unequivocally approved. Could you point us to some of these invoices that you say disclosed the methodology? Is one of those 2408? So 2408, Your Honor, is the questionnaire response in which Hyundai first discussed its method for reporting service-related revenue, or SRR, consistent with the terms of sale. If you'd like to see the actual documentation, I would direct the court, most relevantly, to appendix 10311 to 10348. These are the sales documents for multiple sales that the department reviewed at verification and which Hyundai highlighted the specific line items for the Court of International Trades review before the proceedings in that court. We would further point the court to appendix 2891 to 2910. Wait, wait, this is just numbers. What's your best invoice that discloses this? I would say most certainly in terms of the temporal aspect, it would be 2891 to 2910. That's the Sequence 11 sales documentation, the purchase order, invoice, and change orders, which all show the separate line items for service-related revenue that were brought to the department's attention during the review before verification by ABB, the petitioner. And that discussion by ABB is at appendix 6162 to 6163. 2911? 2891 to 2910. 2891. Hold on. 2891 is the invoice? Give me one moment, Your Honor. I will just open that as well and confirm. So 2891 is the purchase order. And then if you proceed throughout the pages, what you'll see in particular on 2894 for starters, we have a line item for supervision. Then 2897 begins the change order. Again, 2900, we see supervision. And then another change order at 2903. And then at 2907, we see supervision. So supervision in this case is the service that is discussed, and you can see the revenue for supervision being provided, that $26,000 figure, for example, on 2907. These are the separate line items that contain the separate revenue that ABB highlighted to the department well before verification, therefore indicating that the department had an awareness of what was in this sales documentation. And you didn't create a field separately reporting this? That's correct, because what Hyundai was doing was making clear to the department that it would not create such fields where these services were covered by the terms of sale. So it explained that to the department. The department understood it, and the department approved it in the final determination, the final results of the second administrative review, when it stated that there was no indication. That's at Appendix 9638 to 9639. No indication that Hyundai improperly reported its sales data based on the documentation on the record, including the sales traces reviewed at verification. So what the Commerce Department was saying here was, we've looked at this documentation. We see these separate line items. We still find that Hyundai has reported service-related revenue consistent with the terms of sale, and the fact that there are these line item breakouts is of no relevance to that determination. I would further direct the Court, Your Honor, if I may, as mentioned earlier, to Appendix 100311 to 100348. Those are additional sales documentations where we've, and this was before the Court of International Trade, highlighted the specific separate revenue that, again, the department saw at verification and was aware of in making that final decision. So with that in mind, the department had this full awareness. It saw these documents throughout the administrative review. It reviewed them again at verification, and it failed to provide the deficiency notice. And that's really very relevant here because it completely belies the government's argument that Commerce, quote, discovered the SRR and that Hyundai concealed it. It may have not reported it, but that reporting was consistent with the basis of reporting of the terms of sale, which, as discussed, the department approved in the final results of the second administrative review, just as it had in previous reviews. And Hyundai made clear, and that's what we see at Appendix 6162 to 6163. That is Hyundai's description of the SRR reporting. I realize that earlier I quoted that for ABB's alerting the department. That is, in fact, at Appendix 6887. Apologies for that. But we see in that discussion Hyundai making clear the basis for its reporting of service-related revenue on the terms of sale. So it's important because 1677MD, as discussed earlier, requires the department, as soon as it realizes that information is missing from the record, to issue that deficiency notice. It failed to do so during the review, and it failed to do so again when it was remanded to the department after proceedings at the Court of International Trade. Because of that failure, and because that failure is not excused, there is no basis to affirm the application of facts available and no defense for the government. In addition to its awareness, the government, the Department of Commerce, also approved Hyundai's SRR reporting. As we discussed on Appendix 9638 and 9639, no indication based on the sales documentation that Hyundai improperly reported its sales data. But also importantly, in that final results decision, we find repeated and unequivocal statements by the Department of Commerce that there is no basis for the application of facts available and no basis for an adverse inference. On Appendix 9649, they state no basis for the application of facts available because the department could not conclude that there was necessary information not on the record, could not conclude that Hyundai withheld information, could not conclude that it acted significantly to impede the proceeding. And further, on Appendix 9662, the Commerce Department stated that due to its analysis of the comments, it found Hyundai to have responded to the department's various requests for information to the best of its ability. And that goes to the application of an adverse inference under 1677 E.B. I would point to this court statement in the seminal case of Nippon Steel versus the United States, when the court stated that before applying an adverse inference, Commerce must examine the extent of the respondent's abilities, efforts, and cooperation and may apply an adverse inference only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made. Here, it would not have been reasonable for Hyundai to be any more forthcoming, given the department's awareness and given its approval of Hyundai's SRR reporting. Indeed, we even saw this after the final results in the department's ministerial error memorandum at Appendix 9796 to 9798, where it stated that the department found no such capping was necessary because based on its review of the record, it did not suggest that Hyundai should have reported revenues from the reimbursement to expenses. And so throughout the review, throughout the remand, there was no discovery. Rather, the Commerce Department's view, as it admits, quote, evolved. At page 29 of its brief and Appendix 104, the Commerce Department's view evolved, and because of that evolution, it has penalized Hyundai. That is fundamentally unreasonable, and it is unsupported by the statute. With that, I rest and yield the rest of my time to rebuttal. Okay. Any more questions at the moment for Mr. Kindler? No. No. Okay. Thank you. Then we'll hear from Mr. Toder. May it please the Court. We respectfully request that the Court affirm the decision of the Court of International Trade that properly affirm the Department of Commerce's determination. Mr. Toder, this is Judge Stein. On page 26 of your brief, you say because Commerce did not receive notice of Hyundai's deficient response until verification, et cetera, et cetera. But that's not accurate, right? You had plenty of notice about what their methodology was before verification. We disagree with that insofar as Commerce's initial questionnaire, specifically at page 248 of the record, directed Hyundai to report any service-related revenues in a separate data field in its questionnaire response. Yeah, but they told you they weren't doing that, for example, at 6162-63, right? I mean, they didn't make a mystery about it. They told you what they were doing. Well, they said that they would report it if there was a separate purchase order to the customer that had the separate item in there. But that's not what Commerce asked for. Commerce asked them to report the revenue, not a document. Wait, wait. The question that I asked is not what Commerce asked for. My question is, you had notice. Contrary to what you said in your brief, you had notice that they were doing it in a way that you thought was noncompliant. We disagree with that because this is a document. Why is it that Appendix 6162-63, where they answered your questionnaire, they told you exactly what they were doing, why isn't that notice? Because the reporting that they gave in association with that questionnaire was they had no such revenues to report. And that was inaccurate, as Commerce later determined. And we looked specifically in the first remand result. No, no, you're not answering my question. Why didn't 61-6, the answer to the questionnaire, tell you what they were doing? It told Commerce what they were doing, but it didn't reveal that there were, in fact, service-related revenues that they weren't reporting as a result of what they were doing. The invoice was the service revenues, right? Some of them. The ones that discovered with verification were not reported then, and they showed other service-related revenues well beyond what Hyundai had originally reported. And Commerce only had notice of those at verification, and that was the basis for Commerce applying the partial adverse facts available for the reasons explained. Specifically at page 107 of the record in the initial remand results, Commerce goes through how an invoice Commerce discovered only at verification had various service-related revenues that Hyundai did not report in that associated invoice. Okay, that may be true that there were additional invoices, but you had invoices earlier that disclosed what they were doing. Now, my question to you is why, under the statute, when it says specifically that they're supposed to receive an opportunity to remedy, why didn't you give them an opportunity to remedy? Because Commerce did not have notice of that. Hyundai just said what they were doing. They didn't say what they were doing excluded service-related revenues, and that was the key distinction. That's why Commerce did not have notice before verification, why it wasn't required to give notice under 6077MD, which provides that Commerce shall give the opportunity to correct in compliance with the time limit set for the investigation. There was a time limit placed on submission of factual information. Wait, wait, wait. You're being totally confusing. If you had notice of their methodology, you were obligated to give them an opportunity to correct, right, to remedy? Only if we had noticed that there was something wrong as a result of what they reported. Okay. So if we conclude that you did have notice, we have to reverse, right? It's notice of not only that Hyundai reported what they were doing, but what they were reporting was not what Commerce asked for. Okay. Please answer my question. If we conclude that you had notice of what they were doing, we have to reverse, right? If Commerce had notice before verification of what Hyundai was doing and that notice of what Hyundai was doing should have given Commerce notice that Hyundai had not complied with Commerce's request, then Commerce should have given the 1677MD notice, but that's not what happened here. What happened here was Hyundai gave notice of what it was doing, but that notice did not give Commerce notice that Hyundai had failed to give the information Commerce had requested, specifically at page 248 of the record in its initial questionnaire, and that's the reason why Commerce was not required to give the 1677MD notice or deficiency opportunity in this case. So suppose we hypothetically were to agree that they didn't give notice, contrary to what we've been discussing. Where does the statute say that excuses you're giving them an opportunity to remedy? Okay. So we look at 1677MD. It says if the administrating authority, Commerce, determines that a response does not comply with the request, Commerce shall promptly inform the person, including the response to the nature of the deficiency and to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigation or reviews under this subtitle. And that's the key point here. This information that showed that Hyundai's reporting did not match up with what Commerce had asked for was only discovered at verification. That was after the time limit for submission of factual information. So that was beyond the point when Commerce would be expected to give notice under 1677MD. And that's why the fact that the information didn't come up with verification, which is not supposed to be submission information. It's supposed to be confirming information that's already been submitted. That's why it doesn't trigger a 1677MD requirement. And when you look at the specific information, for example, in the remand results at page 107, Commerce describes one Hyundai invoice, which is in the record from the verification exhibits at appendix 8068. That goes through that there were separate service-related revenues on a Hyundai invoice that were not reported in a separate field as Commerce had asked for. This had the effect of making Commerce not able to apply its capping methodology, in essence causes Hyundai's U.S. price to be higher than it would have been otherwise, and thus its dumping margin to be lower than it would have been otherwise. That was the reason why that's important. Commerce approved the Hyundai methodology in the original final decision, right? It did. And then we asked for and the court granted a voluntary remand based upon ABB's, Commerce's, you know, in our consideration of ABB's arguments. And the court granted Commerce a voluntary remand as it's permitted to do under this court's decision in SKF USA. And Commerce reexamined the record and reached a different factual conclusion on remand. And again, it is permitted to do specifically, for example, under this court's decision in Tung Mung Development Company, that Commerce can reach a different factual conclusion on remand. And that different factual conclusion can still be subordinated by substantial evidence, can still be entitled to Chevron deference, even though they reached a different factual conclusion. Commerce initially approved this and knew exactly what was going on, right? It knew what ABB's arguments were that it was wrong. It knew what they were doing. It knew what they were doing, right? It had the same information. It did not reopen the record on remand. So yes, it had the same information in its possession at the time. It just reached a different conclusion upon remand, upon reconsideration of the record. So knowing what the methodology was, it approved it, correct? In its initial final decision, but that has been superseded by its remand decision found in this court in Tung Mung. And so that new remand decision, you know, now I guess there are three remand decisions. The court made three remands, some on other issues, but that became Commerce's final determination and replaced the earlier one insofar as it reached a different factual conclusion. Okay, but it seems to me difficult for Commerce to complain that it was misled when it knew exactly what they were doing and approved it in the first final decision. It didn't have the information for purposes of 1577MD within the time limit for the investigation at any time. It only discovered that information in verification. How can it say that it was misled? It was, well, Hyundai failed to cooperate to the best of its ability under Nippon's deal, but in terms of whether Commerce didn't have the information. Don't interrupt me. What I'm asking you is when you approved what they were doing, how could you say that you were misled? They didn't have the information prior to the deadline for factual submissions. Verification only happened afterward. Commerce reached a conclusion upon remand as it did in the original decision as to whether that verification information caused it to change its conclusion, but the relevant consideration as to whether Commerce had the MD requirement of deficiency, that was triggered at the initial fact deadline, not at anything discovered at verification or later. Okay, but after verification, you knew exactly what they were doing and you approved it, right? Yes, in the original decision. Okay. However, that is not the date of the triggering event for MD. That is our point on that. The other point Hyundai is raising, if I may turn to that, is whether it was appropriate for the court to affirm Commerce's application of adverse facts available. They suddenly suggested they should be limited to neutral facts available, the average of the five rates. The court properly affirmed Commerce's finding that adverse facts were appropriate. Specifically, the court found that Hyundai failed to cooperate to the best of its ability because it had this information in its possession. It just chose not to report it to Commerce in the form and manner Commerce requested. Hyundai said, well, this is how Commerce accepted it in the prior investigation and review, and we're going to report it the same way. Commerce asked a different question. It's permitted to ask a different question. It should get the information it wants, not the information Hyundai wants. I see that I've reached the end of my time. Do you have any more questions for Mr. Toter? No. Okay. Ms. Brewer, I think Mr. Toter used up your time, but please proceed and tell us whatever else. No need to cover what's already been covered. Thank you, Your Honor. Good morning. Melissa Brewer for ABB. May it please the court. I'd like to bring into this discussion a little bit of context that I think would be very helpful. And the review underlying this appeal is the second administrative review of this anti-dumping duty order. The appeal of the third administrative review recently concluded just in the fall of last year, and it involved very similar issues that I think are helpful to bring into this discussion. Was anything filed with the court after that review, or are you giving us new information? No, Your Honor. This court upheld, pursuant to Rule 36, the CIT's decision that upheld Commerce's decision. We cite this all in our brief. And in that administrative review, there was a very similar reporting deficiency. Commerce had, again, asked Hyundai to report separately negotiated revenues. There was a failure to do so. And as a result, Commerce actually applied total adverse facts available to Hyundai for its reporting shortcomings in that review. And the Court of International Trade upheld that decision. I want to be sure what your point is, that we should decide this case in accordance with the decision of the third review and ignore what we're told in the briefs on this case? No, Your Honor. Not ignore what you're told in this case, but take into consideration the fact that Hyundai made a nearly identical argument in the appeal of the third review that the CIT rejected and that this court affirmed. And in that review, Hyundai argued Wait, that's not true, right? In that appeal, the opportunity to remedy wasn't an issue, was it? Well, in that, I'm weighing in on the argument that Hyundai made that it can rely on prior reporting, Your Honor. Answer my question. That proceeding did not involve the opportunity to correct, to remedy, right? Not the way that it arises under 1670.70 in this appeal. But if I may, Your Honor, it involves the question that has been discussed about whether Hyundai can rely on its reporting in prior reviews the way it did throughout its questionnaire responses in this review. They're not arguing that they did it correctly. They are arguing that when they did it incorrectly, Commerce was aware of it instead of giving them an opportunity to correct. That's not an issue in the other case. That's correct, Your Honor. But if I may, the court was asking about the exchange and the questionnaire responses. And I do see my time is up, Your Honor. If I may make a point. All right. The court was asking about the exchange and the questionnaire responses. And to be as brief as I can, Commerce asked if the invoice to your customer includes separate charges, create a separate field and report those charges. Hyundai provided an incomplete response. And it did not alert Commerce to the fact that the invoices to its customers did, in fact, include that information. And so to the extent that it relies on its reporting in prior reviews. They gave them invoices, right? They gave them invoices and they described exactly what they were doing. They did not, Your Honor. And the court pointed to the appendix. How is it that they didn't tell them what they were doing? It seems to me at 61, 62, and 63, in response to the questionnaire, they told them exactly what they were doing. And indeed, Commerce approved it and said, yes, that's right. I'm looking at that quote, Your Honor, where Hyundai said the customer had issued a separate, where the customer had issued a separate additional purchase order for services related to, but not included in the purchase order for the sale. Those are the revenues that Hyundai reported. That says absolutely nothing about the fact that there were invoices, numerous invoices, that included separate charges and that Commerce asked Hyundai to report and asked them to create a separate field for. So this response is incomplete. And it does not disclose the response to the factual question that Commerce asked. This is Commerce's attempt to build the record in this review, to gather facts from Hyundai. And Hyundai simply failed to alert Commerce to the fact that there were invoices that were responsive to Commerce's question and that it should have reported those charges. Commerce in its final decision described exactly what they were doing, was well aware of it, and said, that's fine. We agree that's the right methodology. How were they misled under those circumstances? Your Honor, Hyundai's reporting during the underlying review was never complete. So what happened was... You're not answering my question. How could it be that Commerce was misled when it itself described what was going on and said it was fine? Because as Commerce then explained in the first remand, Your Honor, it didn't fully understand the record because Hyundai hadn't built the record as Commerce requested. There was missing information throughout the review, and Commerce didn't understand when it gathered the information. There was no information after the remand, right? That's correct. The record closed during the administrative review. But Commerce's understanding of the facts and what Hyundai had withheld, that's what evolved, and that's what was explained on remand. If a respondent doesn't cooperate during a review and give you everything you ask for, you know, it's hard to, at a final result, to bring everything together and... That seems to be an inaccurate description of what Commerce said in its final decision. It explained exactly what was going on and said it was fine. Well, Your Honor, I think that the first remand explains why the final results were a mistake of fact based on the record. I think we have the position. Is there any last word you need to give us, Ms. Brewer? I appreciate the court's time. Thank you, Your Honor. All right. Mr. Kendler, you have some rebuttal time. Thank you, Your Honor. The government and ADB have failed to demonstrate that the government, quote, discovered Hyundai's SRR reporting. Any such discovery was the result of the department's self-proclaimed evolution of how it considered SRR made after the final results. Its awareness and approval of Hyundai's SRR reporting belies any notion of a discovery. The government's defense, therefore, is untenable. The only reason the CIT excused Commerce from providing the statutorily required deficiency notice was because of that reported discovery. And without it, there is no justification for the failure to provide that notice and, therefore, no justification for the application of facts available. Again, with its full awareness of Hyundai's SRR reporting, Commerce concluded that there was, quote, no indication that Hyundai improperly reported its service-related revenue, and that includes its review of sales documentation at verification. Bless you. I assume that was a sneeze. Going to the point that the government made about 1677MD and there being insufficient time, eight months passed between verification and the final results. Verification was in July of 2015. The final results were in March of 2016. Yet the government, again, in the final results stated no indication of improper reporting. There was sufficient time to issue a deficiency notice, and nothing in the statute justifies the department's failure to do so. Likewise, there's no justification for the application of an adverse inference. Again, the department unequivocally found no basis to conclude that Hyundai did not cooperate to the best of its ability. It's, quote, evolution on remand is the only reason why it changed that factual conclusion. And given the words of this court, Hyundai could not have been more, quote, forthcoming given this clear and unequivocal contemporaneous acceptance of Hyundai's SRR reporting and conclusion. If I may finish, Your Honors. Please, yes. And conclusion that Hyundai cooperated to the best of its ability. This court should, therefore, reverse the CIP and remand to the department to make a finding without the application of adverse facts available. Thank you, Your Honors. Any more questions for Mr. Kunder? No. All right. Thank you. Thanks to all counsel. The case is taken under submission. That concludes our argument calendar for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.